IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 3745 |
| | ) | |
| FORGE INDUSTRIAL STAFFING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER REGARDING
THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff and counter-defendant National Casualty Company ("NCC") and defendant and

counter-plaintiff Forge Industrial Staffing, Inc. ("Forge") filed cross-motions for partial

summary judgment (Dkt. Nos. 40, 47) in an insurance policy dispute regarding whether a

conflict of interest exists such that insurer NCC is required to pay for insured Forge's hiring of

an independent counsel in employment discrimination litigation against Forge brought by former

Forge employees.  For the reasons stated below, the court grants NCC's motion for summary

judgment and denies Forge's motion for summary judgment.

BACKGROUND

Most of the material facts regarding this issue are undisputed.  NCC issued to Forge a

Professional and Employment Practices Liability policy.  Under the Employment Practices

Coverage Part of the policy (hereinafter "Employment Coverage Part"), NCC agreed to "pay

DAMAGES which you [Forge] become legally obligated to pay and CLAIM EXPENSE" made

against Forge during the applicable period of the policy and with proper notice.  (Dkt. No. 22-2

1

at 21.)  Liability is limited to $2 million per claim and in the aggregate with a $25, 000

deductible per claim including claim expenses.  As relevant here, damages do not include

punitive, exemplary, or a multiple of compensatory damages.  (*Id.* at 22.)  In addition, the

coverage under the Employment Part excludes:

> any CLAIM based upon or arising out of dishonest, criminal or fraudulent actions
> committed by YOU or the willful failure by YOU or with YOUR consent, to comply with
> any law or any governmental or administrative order or regulation relating to
> EMPLOYMENT PRACTICES.  Willful means acting with intentional or reckless
> disregard for such employment-related laws, orders or regulation [hereinafter "willful
> failure exception"];

> any EMPLOYMENT PRACTICE based upon or arising out a client to whom
> TEMPORARY HELP is supplied by the NAMED INSURED;

> any CLAIM based upon or arising out of YOUR rendering of or failure to render
> professional services;

(*Id.* at 24.)  Part of NCC's employment practices coverage includes a duty to "defend any

suit against you seeking DAMAGES because of EMPLOYMENT PRACTICES" and that NCC

has "the right to appoint counsel and investigate any CLAIM or suit."  (*Id.* at 21)  Under the

Employment Coverage Part, "claims" are defined as:

> an oral or written notice from any EMPLOYEE or applicant for employment by YOU
> that it is their intention to hold YOU responsible for EMPLOYMENT PRACTICES. . . .
> Claims will also include our obligation to defend YOU for any civil proceeding in which
> fact finding will take place when it is the alleged result of EMPLOYMENT PRACTICES
> to which this Coverage Part applies.  This includes any administrative proceedings
> established under applicable federal, state or local laws as may be applicable to
> EMPLOYMENT PRACTICES.

(*Id.* at 22.)  Four of Forge's former employees, George De La Fuente ("De La Fuente"),

Stephanie Kittle ("Kittle"), Anthony Hughes ("Hughes"), and MariCarmen Riveria ("Riveria"),

have each filed a charge against Forge with the Equal Employment Opportunity Commission

("EEOC"), alleging that Forge discriminated against them.

2

In De La Fuente's EEOC charge and later-amended EEOC charges, De La Fuente, who worked in Forge's Naperville, Illinois office, alleged that Forge retaliated against him for complaining about Forge's alleged discriminatory staffing practices to the Human Resources Manager and the Vice-President/Co-owner of Forge, in addition to discriminating against him based on his national origin. (Agreed Supp. Statement Ex. 1.) According to De La Fuente's charge, Forge engaged in a pattern and practice of discrimination by honoring client's illegal requests for staffing needs that were explicitly based on protected categories. (*Id.*)

Hughes's EEOC charge raised similar pattern and practice allegations against Forge, asserting that the Regional Director of the Louisville, Kentucky office expected Hughes to fulfill client's illegal requests for staffing based on protected categories and retaliated against him when he complained about the practice. (*Id.* at Ex. 2.) Hughes also alleged that he was discriminated against based on his race. (*Id.*) Hughes asserted in his EEOC charge that clients of Forge were making requests for staffing that were discriminatory, such as: "men only," "women only," "don't send any more Mexicans or Blacks," and "no Hispanics." Hughes told his regional director about the discriminatory requests, and his regional director responded that Hughes "'shouldn't take offense because that's just how they are,' that 'they have a good ol' boy mentality,' and that 'if I tried to tell them how to run their company, they might stop doing business with Forge.'" (Dkt No. 57, Ex. 2.) On a separate occasion, Hughes also complained to the regional director about a discriminatory remark made by a colleague about Hispanics. After Hughes continued to complain about clients' discriminatory requests, Hughes claimed that he was fired based on a pretextual reason.

Riveria's and Kittle's EEOC charges related to alleged discrimination directed

3

specifically at them and, like Hughes, occurring in the Louisville office. (Agreed Supp.

Statement at Exs. 3 and 4.) Kittle in her EEOC charge alleged that she was constructively

discharged based on her gender and being pregnant, and Riveria alleged in her EEOC charge that

she was discriminated against based on her disability, gender, and race.

The EEOC has completed its investigation and issued "Right to Sue" letters for all but De

La Fuente, for whom the EEOC investigation continues. To date, no lawsuits have been filed by

the EEOC or any of the three employees for whom "Right to Sue" letters have issued. Forge

separately filed a lawsuit against De La Fuente, in which De La Fuente filed a motion to file a

First Amended Answer and Counterclaims, that included a prayer for punitive damages. *See*

*Forge Industrial Staffing, Inc. v. De La Fuente, et al.*, No. 06-3848, (N.D. Ill., filed on July 17,

2006). De La Fuente in the exhibit to his motion, his proposed First Amended Answer and

Counterclaims, noted that he intended to file either a new lawsuit or an amendment to his

counterclaims, adding Title VII claims, once the EEOC issued his "Right to Sue" Letter. (No.

06-3848, Dkt. No. 47-2.) The parties subsequently settled the lawsuit and dismissed the claims

with prejudice before the district judge presiding over the case decided whether De La Fuente

would be granted leave to file his amended answer and counterclaims. (No. 06-3848, Dkt. No.

63, Jan. 24, 2007.) According to NCC in its supplemental brief, "De La Fuente has released

Forge in connection with the conduct alleged in his EEOC charge in exchange for an amount

paid entirely by NCC." (Pl. Supp. Br. at 13.)

The two parties dispute whether NCC reserved rights under its insurance policy when

NCC agreed to defend Forge in the EEOC proceedings brought by these four employees and

NCC assigned its own counsel. In a letter dated April 21, 2006, NCC agreed to defend Forge in

4

accordance with the Employment Coverage Part and appointed counsel to represent Forge with regard to the EEOC proceedings on the discrimination charges filed by the four former employees. NCC cited specific paragraphs of the insurance policy, but did not cite the section regarding what is excluded from coverage and made no mention either way of reserving any rights under the policy. NCC also asserted in the April 21, 2006 letter that NCC would not pay for or reimburse Forge the cost of its independent counsel that Forge had already hired.

NCC followed up its April 21, 2006 letter with a second letter dated May 24, 2006 from its hired attorneys. In the May 24, 2006 letter, counsel for NCC stated that "NCC has had further opportunity to review the allegations of the EEOC charges, the relevant provisions of its insurance policy, and all other information that has been made available to date." (Pl. Ex. D. at 2.) NCC set out the facts from the EEOC allegations regarding the alleged discrimination and reproduced sections of its policy with Forge, including the Employment Coverage Part section entitled "Exclusions" and specifically the entire text of the willful failure exclusion, the exception for employment practices based upon or arising out of the client, and the exception for services rendered or that fail to be rendered to the client. (*Id.* at 6.) In a section of the letter entitled "Coverage Discussion," counsel for NCC concluded that there is no conflict of interest requiring NCC to pay for independent counsel for Forge based on the speculative nature of any future claim for punitive damages arising from future litigation, presumably under the duty to defend in the Employment Coverage Part of the policy. But counsel for NCC clarified that "When, and if ever, one of the claimants actually seeks punitive damage relief," any potential conflict will be addressed at that time. (*Id.* at 16.)

Most importantly, at the end of the May 24, 2006 letter, counsel for NCC states:

        There may be other reasons why coverage is limited or precluded under the policy
or applicable law.  Nothing in this letter, or in National Casualty Company's
investigation of this matter, should be construed as a waiver of any right National
Casualty's [sic] has under the policy or applicable law.  National Casualty Company
reserves all rights it has or may have under the policy and applicable law.  National
Casualty Company reserves the right to reevaluate its coverage position in the event it is
presented with new information.

(*Id.*)  On June 15, 2006, counsel for Forge replied to the May 24, 2006 letter.  (Def. Ex.

D.)  As relevant here, counsel for Forge challenged NCC's contention that there was no need to

pay for independent counsel for the EEOC proceedings and any future litigation, and instead

identified two possible conflicts of interest resulting from NCC's explicit reservation of its rights

under the policy in its May 24, 2006 letter.  The first conflict of interest is based on the

possibility that the EEOC or the former employees could seek punitive damages in future

litigation, and punitive damages are not covered by the policy.  The second conflict of interest is

that the "discrimination charges in issue here embrace, by their very nature, the possibility that

Forge could be found to have engaged in willful, dishonest, fraudulent, criminal, malicious or

intentional torts," for which the policy specifically excludes coverage.  (Def. Ex. D at 8.)  As

characterized by Forge, "Forge is presented with a real and present reservation of National

Casualty's rights under the Policy that threatens Forge's coverage depending, in part, upon how

the discrimination charges are defended."  (*Id.*)  Since receiving and responding to NCC's May

24, 2006 letter, Forge has continued to retain its own independent counsel to defend the EEOC

proceedings.

        In NCC's supplemental brief regarding the reservation of rights, NCC states its belief that

The EEOC charges contain no allegations that would bring them within the ambit of the
[willful failure] exclusion, and as such NCC has not specifically reserved its right to
disclaim coverage on this basis.  Rather, NCC merely reserved its right to modify its
coverage position in the event that additional allegations were made in the context of a

lawsuit or a claim for punitive damages was made against Forge at some point in time.

(Pl. Supp. Br. at 9.)[1]  NCC filed a complaint, alleging among other claims that there is no

conflict of interest in NCC's control of Forge's defense in the EEOC proceedings and that NCC

is not liable to Forge for the reimbursement of any fees, costs, or expense already incurred by

Forge and that Forge may continue to incur in retaining its independent counsel.  NCC filed a

partial motion for summary judgment on the conflict-of-interest issue and Forge responded with

its own cross-motion for summary judgment.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  This court's

function is not to weigh the evidence and determine the truth of the matter, but to determine

whether there is a genuine issue for trial.  A party who bears the burden of proof on a particular

issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific

factual allegations, that there is a genuine issue of material fact that requires trial.  *Celotex Corp.*

*v. Catrett,* 477 U.S. 317, 324 (1986).  In considering a motion for summary judgment, this court

is not required to scour the record in search of evidence to defeat the motion; the nonmoving

---

[1]If Forge had not yet hired independent counsel, NCC's representations in its briefs that it
did not reserve its rights under the willful failure exception when defending Forge in the EEOC
proceedings would resolve this litigation because NCC would then explicitly disclaim these
rights and any later claim to these rights would be waived.  But, Forge has already hired and
owes legal fees to independent counsel who has been representing Forge, having understood
NCC not to reserve its rights.

party must identify with reasonable particularity the evidence upon which the party relies. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003). Finally, the evidence relied upon must be competent evidence of a type otherwise admissible at trial. *Stinnett v. Iron Work Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

<u>ANALYSIS</u>

At issue is whether NCC's duty to defend creates or will create a conflict of interest such that NCC must pay for Forge to hire its own independent counsel in the EEOC and subsequent legal proceedings. An insurer has the duty to defend an insured in an action where the allegations of the complaint are even potentially within the policy coverage, making an insurer's duty defend broader than its duty to indemnify. *See, e.g.*, *Am. Family Mut. Ins. Co. v. W.H. McNaughton Builders, Inc.*, 843 N.E.2d 492, 510 (Ill. App. Ct. 2006). Although the duty to defend is broader than the duty to indemnify, an insurer's duty to defend permits the insurer to control the defense of the insured unless there is an actual conflict of interest between the insurer and the insured. *Am. Country Ins. Co. v. Williams*, 791 N.E.2d 1268, 1276 (Ill. App. Ct. 2003). The rationale behind the limited exception to an insurer's right to control an insured's defense is premised on a recognition that counsel retained by the insurer to represent the insured has ethical obligations to both the insurer and the insured but may have closer ties to the insurer who has retained the counsel. *Am. Family Mut. Ins.*, 843 N.E.2d at 510-11. Based on these dual ethical obligations, a conflict may result when the interests of the insured and the insurer are not aligned, and this conflict of interest requires the insurer to reimburse the insured for the hiring of independent counsel. *Nandorf, Inc. v. CNA Ins. Cos.*, 479 N.E.2d 988, 991-92 (Ill. App. Ct. 1985)

In determining whether a conflict of interest exists such that the insurer should no longer be permitted to control the defense of the insured, Illinois courts consider whether "in comparing the allegations of the complaint to the policy terms, the interest of the insurer would be furthered by providing a less than vigorous defense to those allegations." *Nandorf*, 479 N.E.2d at 992. That an insurer may have an interest in denying policy coverage does not alone create a conflict of interest sufficient to wrest control of the insured's defense from the insurer. *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.,* 353 F.Supp.2d 966, 974 (N.D. Ill. 2005); *Shelter Mut. Ins. Co. v. Bailey*, 513 N.E.2d 490, 496 (Ill. App. Ct. 1987). Rather, if "it appears that factual issues will be resolved in the underlying suit that would allow insurer-retained counsel to 'lay the groundwork' for a later denial of coverage, then there is a conflict between the interests" of the insurer and the insured. *Am. Family Mut. Ins*., 843 N.E.2d at 498.

The court first turns to the easier of the two issues: whether there is a conflict of interest with regard to the possibility that, in future litigation, one of the former employees or the EEOC could bring a claim for punitive damages against Forge that either dwarfs the compensatory damages sought or is predicated on conduct not covered by the policy. NCC correctly argues that a conflict of interest for a possible future claim of punitive damages is speculative and not a proper basis for the hiring of independent counsel. *See Vacuum Indust. Pollution, Inc. v. Union Oil Co. of Ca.*, 764 F.Supp. 507, 515-16 (N.D. Ill. 1991). A conflict of interest must be an actual conflict, and not merely a potential conflict for an insurer to relinquish control of an insured's defense. *Am. Country Ins. Co.*, 791 N.E.2d at 1276. At this point, the EEOC and the former employees, excluding De La Fuente, have not yet filed a lawsuit in federal court, let alone a lawsuit asserting a claim for punitive damages. De La Fuente in his litigation at the most

9

suggested that he may later file a claim for punitive damages, but never filed such a claim and his case is now settled. In addition, punitive damages are not available in proceedings before the EEOC.

The mere threat of punitive damages, which are excluded from coverage in the policy, is not enough to trigger a conflict of interest, requiring the hiring of independent counsel, especially given that, under Illinois law, a claim of punitive damages does not create a ipso facto conflict of interest where punitive damages are not covered by the insurance policy. *See id.* at 516. Instead, Illinois cases look at whether the insurer still has an interest in providing a vigorous defense, such as where a large amount of compensatory damages are being sought in addition to a large amount of punitive damages, as compared to a cases where a small amount of compensatory damages but a large amount of punitive damages are being sought. *See Tews Funeral Home, Inc. v. Oh. Casualty Ins. Co.*, 832 F.2d 1037, 1046-1047 (7th Cir. 1987); *Vill. of Lombard v. Intergovernmental Risk Mgmt. Agency*, 681 N.E.2d 88, 95 (Ill. App. Ct. 1997) (finding no conflict where the punitive and compensatory damages sought arise out of the same factual occurrence and the covered and noncovered claims are not mutually exclusive). As the factual circumstances now stand, NCC and Forge's interests in terms of damages are aligned. Although a conflict of interest could later arise as a result of a claim for punitive damages, requiring NCC at that time to hire independent counsel for Forge, the court determines whether independent counsel should be hired based on th existence of actual conflicts of interest.

Whether there is a conflict of interest at this point with regard to the EEOC proceedings, however, is a more difficult question. Forge contends that the allegations raised in the EEOC charges could, if proven, fall under one of the exceptions to coverage, and thus create an actual

10

conflict of interest based on the existence of mutually exclusive covered and noncovered claims in the EEOC proceedings. NCC argues that, under the Employment Coverage Part insurance policy, NCC does not have a duty to defend Forge in EEOC proceedings and the filing of a lawsuit based on the EEOC proceedings is, like punitive damages, speculative at this point. In making this argument, NCC cites the policy language in the Employment Coverage Part under the subheading "Defense," which states "We have the right and duty to defend any suit against you seeking damages because of employment practices . . .," and asserts that there is no duty to defend a "claim" before the EEOC. (Def. Ex. C. at 21.)

NCC's excerpt of the Employment Coverage Part insurance policy is incomplete. Although the subheading "Defense," limits the duty to defend to "suits," the terms "suits" is never defined in the policy. Under Illinois law, the term "suit for damages," when not defined, has been interpreted to include governmental agency complaints filed pursuant to statutory authority, which would include EEOC proceedings as applied to this case. *See Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1214 (Ill. 1992). In addition, the Employment Coverage Part in its definition of the term "claim(s)" states:

> CLAIMS will also include *our obligation to defend* YOU for any civil proceeding in which fact finding will take place when it is the alleged result of EMPLOYMENT PRACTICES to which this Coverage Part applies. This includes any administrative proceedings established under applicable federal, state or local laws as may be applicable to EMPLOYMENT PRACTICES."

(Dkt. No. 22-2 at 21 (emphasis added).) Under this definition of "claim(s)," as well as Illinois's construction of the term "suits," when not defined, NCC has a duty to defend Forge in EEOC proceedings. Because NCC has a duty to defend Forge in EEOC proceedings, NCC would have an obligation to hire independent counsel for the EEOC proceedings if a conflict of interest

between NCC and Forge exists.

Because the court has established that NCC has a duty to defend Forge in EEOC proceedings, the issue of whether the claims alleged by the former employees in their EEOC charges create a conflict of interest is no longer speculative or hypothetical. At the time Forge hired independent counsel, Forge could have been found liable for damages by the EEOC on the EEOC charges filed by the former employees. The EEOC charges could have resulted in, and still may in De La Fuente's case, compensatory damages based on allegations that, according to Forge, are not covered by the insurance policy.

The court now must decide whether the former employees have alleged mutually exclusive covered and noncovered allegations in the EEOC charges, for which counsel hired by NCC would have a possible incentive to provide a less than vigorous defense with regard to the noncovered claims. Forge argues that an actual serious conflict exists because the pattern and practice claims alleged by De La Fuente and Hughes, if proven, could fall within the "willful failure exclusion" in the policy, the exception for employment practices based upon or arising out of a client, or the exception for claims based upon or arising out of Forge's rendering of professional services. In addition, Forge notes that the claims of Hughes, Riveria, and Kittle all arise out of the Louisville, Kentucky office, and so there could be an argument that the Louisville office has engaged in actions that fall under "willful failure exclusion." Citing its April 21, 2006 letter to Forge in support, NCC responds that it did not reserve any rights to deny coverage for the EEOC claims under the Employment Coverage Part; thus no conflict of interest exists. (Def. SOF ¶ 17.) Irrespective of any reservation of rights, NCC further contends that there is no conflict of interest.

12

The court has scoured NCC's correspondence with Forge and found no language that could be interpreted as NCC's waiving its rights to exclude any coverage under the Employment Coverage Part policy. Furthermore, NCC in its May 24, 2006 letter reserves its rights under the policy, stating that NCC "reserves all rights it has or may have under the policy and applicable law," and quoting in the letter the three exceptions under the Employment Coverage Part that could apply to the EEOC charges in its May 24, 2006 letter. (Def. SOF Ex. D.) No reasonable jury could interpret NCC's correspondence with Forge as anything other than an explicit reservation of its rights to deny coverage under the Employment Coverage Part. *See Essex Ins. Co. v. Stage 2, Inc*., 14 F.3d 1178, 1182-83 (7th Cir. 1994) (declining to imply waiver of right to deny coverage where not express because the insurer's actions did not demonstrate an intent to indemnify the insured in spite of exclusionary clauses.)

Because NCC reserves its rights to exclude from coverage claims that fall under the "willful failure exclusion," employment practices based upon or rising out of the client, or the rendering of services by Forge, the court next must determine whether NCC's and Forge's interests are aligned with regard to defending against the EEOC charges. NCC argues that no conflict exists. Forge assumes without development or explanation that the covered and noncovered claims would be mutually exclusive, and thus would result in a defense that was in conflict.

The court concludes that the two parties' interests are aligned, and counsel hired by NCC would have no incentive to provide a less than vigorous defense to all the allegations raised in the EEOC charges. The allegations relating to covered claims would be those of intentional discrimination, and any noncovered claims would involve willful violation of anti-discrimination

13

laws.  Based on the allegations presented in the EEOC charges, including the pattern and practice of discrimination, the defense of these types of claims would not be mutually exclusive. The former employees do not specifically allege that Forge willfully violated the EEOC laws in their charges of discrimination, and so there is no choice to be made between defending against allegations of intentional discrimination and allegations of willful discrimination.  *See Am. Family Mut. Ins. Co.*, 843 N.E.2d at 499 ("[A]n insurer and its insured will always have a shared interest in the insured's being resolved of liability.").  Rather, counsel hired by NCC would generally defend against the allegations of discrimination, and this defense would cover allegations, if any, of willful discrimination, and of intentional discrimination, without conflict. Counsel hired by NCC would have no incentive to try to resolve factual issues in such a way as to lay the groundwork for a future denial of coverage because defense of the allegations in the EEOC charges in this case would not create an opportunity for counsel hired by NCC to "shift facts in a way that takes the case outside the scope of policy coverage."  *Id.* at 498.  There is no conflict between intentional and willful discrimination with regard to the resolution of factual issues.  *See id.* at 498.

This situation differs from most conflict-of-interest cases seen in Illinois, which address the mutually exclusive covered claims of negligence versus noncovered claims of intentional conduct.  In this case, intentional conduct is covered and intentional discrimination allegations and willful discrimination are not inherently mutually exclusive for purposes of defense in the way that negligent and intentional conduct are.  Moreover, any substantive conflict that could arise based on allegations filed in a complaint in future litigation is purely speculative at this point.

14

<u>CONCLUSION</u>

Accordingly, plaintiff/counter-defendant National Casualty Company's motion for partial summary judgment is granted (Dkt. No. 40) and defendant/counter-plaintiff Forge Industrial Staffing, Inc.'s cross-motion for partial summary judgment is denied (Dkt. No. 47). The case is set for a status hearing to discuss further scheduling of the case on July 24, 2007 at 9:00 a.m. The parties are strongly encouraged to discuss settlement.

ENTER:

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: June 25, 2007

15