IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL CASUALTY COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06 C 3745 |
| ) | |
| FORGE INDUSTRIAL STAFFING, INC., ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND ORDER REGARDING
THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff and counter-defendant National Casualty Company ("NCC") and defendant and counter-plaintiff Forge Industrial Staffing, Inc. ("Forge") filed cross-motions for summary judgment (Dkt. Nos. 74, 80) in this insurance policy dispute. NCC contends that only one issue remains to be determined and asks the court to enter a declaratory judgment as to the number of deductibles owed to it by Forge. In response, Forge asks the court to determine: (1) which deductible applies to Forge's claims—the $5,000 deductible under the Professional Liability Coverage Part or the $25,000 deductible under the Employment Practices Liability Coverage Part of the policy; and (2) whether Forge has satisfied the applicable deductible. Forge also asks for the court to grant summary judgment in its favor on its breach of contract claim. For the following reasons, the court grants NCC's motion for summary judgment and denies Forge's motion for summary judgment.

This insurance dispute concerns NCC's duty to defend Forge against employment discrimination claims brought by four of Forge's former employees. Most of the material facts at issue in the litigation are undisputed and were set out in this court's "Memorandum Opinion and

Order Regarding the Parties' Cross Motions for [Partial] Summary Judgment" dated June 25, 2007 (Dkt. No. 63). The court will not reiterate those facts here. In the June 25, 2007 order, the court determined that NCC's duty to defend Forge under the Employment Practices Liability Coverage Part of the NCC policy did not create a conflict of interest such that NCC was required to pay for Forge to hire its own independent counsel to defend the underlying employment discrimination claims. The court then granted, in general, NCC's motion for partial summary judgment while denying Forge's cross-motion.

The parties have now moved for summary judgment on what they say are the final issues to be resolved in this litigation. The principal issue in dispute is how much, if anything, Forge owes NCC for defending the employment discrimination claims underlying this litigation. To reach a conclusion on this issue, the court must address three distinct questions: (1) whether the employment discrimination claims were covered under the Employment Practices Liability Coverage Part or the Professional Liability Coverage Part of the NCC policy; (2) how many deductibles were triggered under the policy; and (3) whether Forge has satisfied the applicable deductible. Forge also asks this court to grant summary judgment in its favor on Count II of its counterclaim for breach of contract. The court will address each issue in turn.

### 1. Employment Practices Liability Coverage versus Professional Liability Coverage

It is undisputed that the employment discrimination claims underlying this litigation triggered coverage under the Employment Practices Liability Coverage Part of the NCC policy. Forge, however, has maintained throughout this litigation that the claims also triggered coverage

2

under the Professional Liability Coverage Part of the policy.[1] The distinction is significant because under the Employment Practices Liability Coverage Part, Forge is obligated to pay a $25,000 per claim deductible, while under the Professional Liability Coverage Part, Forge is obligated to pay a $5,000 per claim deductible. Thus, Forge reasons, if coverage was triggered under the Professional Liability Coverage Part of the policy, Forge is obligated to pay to NCC only the lower $5,000 per claim deductible rather than the $25,000 per claim deductible.

Under Illinois law, when determining an insurer's duty to defend under a policy of liability insurance, the court must compare the allegations of the underlying complaint with the relevant insurance policy. *Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 732 (7th Cir. 2006) (interpreting Illinois law); *accord Atl. Mut. Ins. Co. v. Am. Acad. of Orthopaedic Surgeons*, 734 N.E.2d 50, 56 (Ill. App. 2000). Insurance policy terms should be read according to their plain, ordinary meaning. *Commonwealth Ins. Co. v. Stone Container Corp.*, 351 F.3d 774, 777 (7th Cir. 2003) (interpreting Illinois law); *accord Allstate Ins. Co. v. Smiley*, 659 N.E.2d 1345, 1350 (Ill. App. 1995). Although ambiguities may arise where a reasonable person in the position of the insured, reading the policy as a whole, could construe the words in different ways, the court should not search for ambiguities where there are none. *Geschke v. Air Force Ass'n*, 425 F.3d 337, 342 (7th Cir. 2005) (interpreting Illinois law); *accord Allstate Ins. Co.*, 659 N.E.2d at 1350. Insurance policy construction is a question of law. *Sokol & Co. v. Atl. Mut. Ins.*

---

[1] By order dated June 25, 2007, this court addressed NCC's duties to Forge under the Employment Practices Liability Coverage Part of the NCC policy. (Dkt. No. 63.) The court did not address at that time whether the claims were also covered under the Professional Liability Coverage Part of the policy. The court's failure to address coverage under the Professional Liability Coverage Part was not intended to be construed as a determination that coverage existed solely under the Employment Practices Liability Coverage Part of the policy.

*Co.*, 430 F.3d 417, 420 (7th Cir. 2005) (interpreting Illinois law); *accord Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (1992).

The Professional Liability Coverage Part of the NCC policy provides that NCC:

> [W]ill pay DAMAGES which YOU become legally obligated to pay as a result of CLAIMS first made against YOU and reported to US in writing provided that:
>
> 1. the WRONGFUL ACT giving rise to the CLAIM occurred during the POLICY PERIOD; and
>
> 2. the WRONGFUL ACT giving rise to the CLAIM is within the coverage of YOUR policy. WE will not pay for any CLAIM excluded by the Coverage Part.

(Compl. Ex. A; Forge Rule 56.1 Statement Ex. A5.) The Professional Liability Coverage Part defines "Wrongful Act" as:

> [A]ny actual or alleged negligent act, error or omission, misstatement, misleading statement, breach of duty or any alleged PERSONAL INJURY offense YOU or any person or entity for whom YOU are legally responsible commit, but only in the performance of PERSONNEL CONSULTING SERVICES or TEMPORARY HELP SERVICES for or on behalf of the NAMED INSURED.

(Compl. Ex. A; Forge Rule 56.1 Statement Ex. A5.) The Professional Liability Coverage Part also provides that coverage under the part does not apply:

> 13. to any CLAIM based upon or arising out of, whether direct or vicarious:
>
>     a. Any actual or alleged wrongful EMPLOYMENT TERMINATION by any of YOU;
>
>     b. Any actual or alleged DISCRIMINATION by any of YOU against any EMPLOYEE, TEMPORARY HELP, or applicant for employment by the NAMED INSURED;
>
>     c. Any actual or alleged SEXUAL HARASSMENT of any EMPLOYEE or TEMPORARY HELP by any of YOU; or

4

> d. Any actual or alleged retaliatory treatment against any EMPLOYEE or TEMPORARY HELP as a result of such EMPLOYEE'S or TEMPORARY HELP'S exercise of rights under the law.

(Compl. Ex. A; Forge Rule 56.1 Statement Ex. A5.)

The discrimination claims underlying this insurance dispute were brought by four of Forge's former employees: George A. De La Fuente, Anthony Hughes, Maricarmen Rivera, and Stephanie Kittle. De La Fuente, who had been employed as the Director of Operations at Forge's Naperville, Illinois office, claimed that Forge discriminated against him based on his national origin and also retaliated against him for complaining about Forge's allegedly discriminatory staffing practices. (Forge Rule 56.1 Statement Ex. A1.) Hughes, who had been employed as the General Manager of Forge's Louisville, Kentucky office, claimed that Forge discriminated against him based on his race and that Forge had retaliated against him after he complained about Forge's alleged practice of accommodating its client's discriminatory staffing requests. (Forge Rule 56.1 Statement Ex. A2.) Rivera and Kittle, who had been employed as service coordinators in Forge's Louisville office, each complained of direct discrimination based on, among other things, their gender. (Forge Rule 56.1 Statement Ex. A3, A4.)

The claims asserted by De La Fuente, Hughes, Rivera, and Kittle concern actual discrimination by Forge against its employees and retaliation by Forge against its employees because the employee opposed Forge's discriminatory staffing practices. Exclusion provision number 13.a. provides that coverage under the Professional Liability Coverage Part does not apply to actual discrimination by Forge against its employees. In addition, exclusion provision number 13.d. precludes coverage for any actual or alleged retaliation by Forge against its employees as a result of an employee's "exercise of rights under the law." Title VII protects an

employee's right to "oppose[] any practice made an unlawful employment practice by this title." 42 U.S.C. § 2000e-3.  Thus the employment discrimination claims underlying this insurance dispute fall within the unambiguous language of exclusion provision number 13 of the Professional Liability Coverage Part of the NCC policy.  Consequently, coverage for the claims is not available under that Part.

Because the court finds that the Professional Liability Coverage Part of the NCC policy does not apply to the employment discrimination claims underlying this insurance dispute, the court will not address the parties' remaining arguments on this point.  Moreover, the court finds that NCC did not waive the exclusion argument because NCC properly raised the issue in response to Forge's assertions in its cross-motion for summary judgment that the Professional Liability Coverage Part deductible, rather than the Employment Liability Coverage Part deductible, applied to the underlying claims in this case.

### 2. Deductible Owed by Forge to NCC under the Employment Liability Coverage Part

NCC alleged in its Amended Complaint and has maintained throughout this litigation that Forge is obligated to pay one deductible for each of the four employment discrimination claims underlying this litigation.  In its motion for summary judgment, however, NCC changed course.  NCC now says that it "is willing to forego its right to collect multiple deductibles" and "now asks this Court to find and declare that Forge owes a single $25,000 deductible."  (NCC Mot. Summ. J. at 2.)  Forge does not dispute that it is obligated to pay to NCC a single deductible in this matter.

Accordingly, this court finds that Forge must pay to NCC a single deductible in connection with NCC's duty to defend the employment discrimination claims underlying this

6

litigation. As previously determined, the Employment Liability Coverage Part, and not the Professional Liability Coverage Part, of the NCC policy applies to the underlying claims. Forge therefore is obligated to pay a single deductible of $25,000 to NCC, which represents the deductible owed to NCC under the Employment Liability Coverage Part of the NCC policy.

### 3. Satisfaction of Deductible

Forge contends that it incurred over $15,798.60 in "joint defense expenses" in connection with the underlying employment discrimination claims that should be applied against any deductible payable by Forge to NCC. Specifically, Forge says that it hired McGovern & Greene to conduct a forensic computer analysis that was crucial to Forge's defense of De La Fuente's discrimination and retaliation claims. McGovern & Greene's report was submitted to Forge's independent counsel at Seyfarth & Shaw, who then allegedly shared the report with NCC-appointed counsel. According to Forge, "defense counsel appointed by NCC to defend Forge approved the use of McGovern & Greene." (Forge's Mem. in Opp. to Summ. J. at 13 (Dkt. No. 81).)

Over one year ago, the parties briefed cross-motions for summary judgment on the issue of whether NCC was required to pay for Forge to hire independent counsel to defend the employment discrimination claims underlying this litigation. In its motion, NCC specifically requested, among other things, that the court declare that "NCC is not obligated to reimburse Forge for any fees, costs or expenses incurred by Forge's independent counsel in connection with the" underlying employment discrimination claims. By order dated June 25, 2007, this court granted summary judgment in favor of NCC, finding that NCC's duty to defend Forge under the Employment Practices Liability Coverage Part of the NCC policy did not create a conflict of

7

interest such that NCC was required to pay for Forge to hire its own independent counsel to defend the underlying employment discrimination claims. Implicit in that ruling is the conclusion that NCC is not obligated to reimburse Forge for any fees, costs or expenses incurred by Forge's independent counsel in connection with the claims. It is undisputed that the expense related to the forensic computer analysis conducted by McGovern & Greene was incurred by Forge's independent counsel. If Forge wished to challenge NCC's obligation to pay the McGovern & Greene expense or any other "joint defense expenses" incurred by Forge's independent counsel, it should have done so during the briefing on partial summary judgment. Because Forge failed to address the issue at that time, Forge has waived the argument.

### 4. Forge's Breach of Contract Claim

Finally, Forge asserts that its breach of contract claim remains viable. The court, however, found for NCC and against Forge on each contested issue identified by Forge in its relevant counterclaims and "Memorandum in Opposition to National Casualty Company's Motion for Summary Judgment and In Support of Forge Industrial Staffing, Inc.'s Motion for Summary Judgement" as representing a breach by NCC of its obligations to Forge under the NCC policy. In particular, the court determined that NCC had an undisputed duty to defend Forge, which NCC performed, but had no duty to pay for Forge to hire independent counsel under the Employment Liability Coverage Part of the NCC policy (*see* June 25, 2007 Mem. Op. & Order); (2) NCC was not obligated to defend the underlying employment discrimination claims under the Professional Liability Coverage Part of the NCC policy (*see supra* § 1); and (3) Forge is not entitled to reimbursement of fees incurred by its independent counsel (*see supra*

§ 3). Accordingly, NCC has done all it was required to do under the NCC policy. Thus Forge's breach of contract claim is without merit as a matter of law.

## CONCLUSION

For the foregoing reasons, plaintiff/counter-defendant National Casualty Company's motion for summary judgment (Dkt. No. 74) is granted and defendant/counter-plaintiff Forge Industrial Staffing, Inc's cross-motion for summary judgment (Dkt. No. 80) is denied. Count II of Forge's counterclaim for breach of contract is dismissed with prejudice. All issues having been resolved in this matter:

Judgment in the amount of $25,000.00 is entered in favor of plaintiff/counter-defendant National Casualty Company and against defendant/counter-plaintiff Forge Industrial Staffing, Inc. Pursuant to Rule 54(b), there is no just reason to delay entry of this final judgment.

ENTER:

_____
James F. Holderman
Chief Judge, United States District Court

Dated: July 29, 2008